IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH R.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 C 5046 |
| v. | ) | |
| | ) | Magistrate Judge |
| ANDREW SAUL, Commissioner of | ) | Maria Valdez |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Joseph R.'s claims for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse the decision of the Commissioner is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 24] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

**BACKGROUND**

I. **PROCEDURAL HISTORY**

On September 9, 2014, Plaintiff filed a claim for DIB, alleging disability since August 16, 2011 due to back pain. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 18, 2016. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On May 12, 2017, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

II. **MEDICAL EVIDENCE**

    A. **Treating Physicians**

        *1. Dr. Samir Sharma*

Plaintiff was injured in a work-related vehicle accident in August 2011. Plaintiff began regular treatment with Dr. Sharma at the Pain & Spine Institute in January 2012, complaining of neck pain, cervical radiculopathy, upper back pain, lumbar radiculopathy, and back pain. Plaintiff was six feet tall and weighed 229 pounds, which equated to a 31.1 BMI. Office notes from Dr. Sharma indicate that

Plaintiff had lumbar muscle tenderness as well as limited active and passive range of motion. Dr. Sharma stated that Plaintiff could work with a twenty-pound lifting restriction, and no repetitive bending, lifting, or twisting. Plaintiff said that he wanted to avoid surgery at all costs. Under Dr. Sharma's care, Plaintiff received epidural injections and a facet joint injection, was prescribed narcotic and non-narcotic pain medications, and was referred to physical therapy ("PT") and given back strengthening exercises he could perform at home. Dr. Sharma repeatedly indicated that home exercises were "the most important factor in long term relief of back pain." (*See, e.g.*, R. 385.) In August 14, 2014 office notes, Dr. Sharma stated that Plaintiff had stopped PT because his insurance had not authorized it. (R. 461.)

### 2. *Dr. Tamir Hersonskey*

Dr. Sharma referred Plaintiff to Dr. Hersonskey, a neurosurgeon, on February 21, 2012, for an evaluation of an L5-S1 herniated disk with annular tear. Dr. Hersonskey first saw Plaintiff on May 1, 2012. An MRI from November 2011 showed a disk herniation at L5-S1 and facet arthropathy with endplate changes. Plaintiff reported to Dr. Hersonskey that he had undergone PT, with mixed results, but his insurance had denied further therapy at that time. He experienced the most pain while sitting or on his knees, and lying down was the best for him. The treatment plan was for Plaintiff to first get a facet injection, then later they could determine whether he should get a discectomy or fusion surgery.

In January 2013, Plaintiff reported that the facet injection helped his pain, which generally hurt more when he was bending, twisting, or rotating. As he had

3

for several months, Dr. Hersonskey recommended that Plaintiff get a discogram, in order to have potential surgery approved by his worker's compensation insurer. Plaintiff wanted another opinion before undergoing surgery. In the meantime, Dr. Hersonskey recommended another MRI, since the last one was done in November 2011.

On May 30, 2013, Dr. Hersonskey said he believed a microdiscectomy could reduce the pain shooting to Plaintiff's right thigh, but there was still a possibility he could need a fusion in the future. Plaintiff indicated he wanted to do more physical therapy, lose some weight, and was motivated to return to the workforce.

Dr. Hersonskey did not believe that acute surgery was yet indicated on August 20, 2013, pending additional attempts at physical therapy. Plaintiff told Dr. Hersonskey during this visit that he had low back pain because "he does volunteer work that he was doing for about 40 hours standing on his legs as a cashier." (R. 502.) Dr. Hersonskey stated that Plaintiff was "not going to benefit from any kind of work which is going to include long hours of standing on his feet, any kind of flexion, extension, lifting of weights which are heavier than 5-10 pounds," and if he were to do desk work, "he should be given the option to get up out of chair, walk around and even lay down in order to ease his pain if necessary." (R. 502.)

### 3. Dr. Ming Hung

Plaintiff began seeing Dr. Hung, a physical medicine and rehabilitation specialist, in 2013 for chronic right low back pain. Dr. Hung's progress notes reflect that Plaintiff was limited in remaining seated or standing, and in transferring

4

positions; he ambulated with a single-point cane; and the pain was aggravated by sitting, standing, walking, using stairs, and bending, and improved upon by lying down. Plaintiff had reduced range of motion, with chronic muscle guarding. Dr. Hung noted that Plaintiff demonstrated fear with movement, and Plaintiff subjectively reported anxiety with movement. Dr. Hung consistently recommended therapeutic exercises, activity, and outpatient PT. On September 11, 2014, Dr. Hung noted that Plaintiff had not followed up with PT since his visit two months earlier due to an insurance denial. The treatment plan was for Plaintiff to have PT, continue his pain medication, and engage in a home exercise program. Most of Dr. Hung's progress notes state that Plaintiff should continue off work until treatment is complete.

### 4. *Other Medical Records*

On December 6, 2012, Plaintiff was evaluated by Dr. Jesse Butler for a discogram. Dr. Butler did not believe one was required, even though conservative treatment had failed, because Plaintiff's spine was normal except for the L5-S1 level. According to Dr. Butler, the only issue was whether Plaintiff wanted to go forward with fusion surgery or continue to wait, but he had reached maximum medical improvement without surgery. He thought that surgery was reasonable, given Plaintiff's pain level and the effect on his activities of daily living, as well as the functional limitations that precluded his prior employment.

State agency medical consultant Dr. Douglas Chang submitted a functional capacity opinion after reviewing the medical record, including evidence submitted

5

by Drs. Sharma and Hersonskey, and some evidence from Dr. Hung.[2] Dr. Chang believed that both Dr. Hersonskey's August 20, 2013 opinion and the functional restrictions assessed by Dr. Sharma were consistent with other objective medical evidence and should be given great weight. He concluded that in an ordinary workday, Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of two hours and sit for six hours, periodically alternating sitting and standing to relieve pain; occasionally climb ramps, stairs, ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, or crawl. He could push/pull an unlimited amount, within the given the lifting and carrying restrictions.

## III.  ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 16, 2011. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disk disease of the lumbar spine with stenosis and obesity, as well as non-severe mental impairments of depression and anxiety. The ALJ concluded at step three that his impairments, alone or in combination, do not meet or medically equal a Listing. Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform work at the sedentary level, with

---

[2] Evidently Dr. Hung would not send some records without advance payment, which is not allowed under SSA policy. (R. 102.)

6

the following functional limitations: lift and/or carry up to twenty pounds occasionally and ten pounds frequently; stand and/or walk for two hours in an eight-hour workday and sit the rest of the workday; occasionally climb, balance, stoop, kneel, crouch, and crawl; to perform work with a sit/stand option, so that Plaintiff could alternate positions every sixty minutes for one to two minutes at a time.

At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a maintenance engineer and a combination job as a belt repairer/maintenance repairer, which were performed at the medium to heavy exertional level. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments

enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d

8

at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

9

**III. ANALYSIS**

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) she improperly assessed Plaintiff's subjective complaints as required by Social Security Ruling ("SSR")[3] 16-3P; (2) she did not correctly consider the opinions of his treating physicians; and (3) her RFC determination did not adequately take Plaintiff's anxiety into account.

SSR 16-3P describes a two-step process for evaluating an individual's symptoms. *See Evaluation of Symptoms in Disability Claims*, SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016).[4] ALJs are directed first to determine whether the claimant has an impairment that could be expected to produce the alleged symptoms, then to evaluate the intensity and persistence of those symptoms, as well as the extent to which the symptoms limit the individual's work-related activities. 2016 WL 1119029, at *3-4. The ruling goes on to guide adjudicators in their evaluation of particular types of evidence, including medical evidence, subjective statements of the claimant, and evidence from non-medical sources. Plaintiff complains that the ALJ failed to comply with SSR 16-3P's guidelines by selectively relying on record evidence, exaggerating Plaintiff's activities, and failing to perform the necessary pain analysis.

---

[3] Interpretive rules, such as Social Security Rulings, do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

[4] The SSA has clarified that SSR 16-3P applies prospectively to decisions made on or after March 28, 2016. *See* SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017). The ALJ's decision was issued on May 12, 2017.

10

The ALJ concluded that Plaintiff's "allegations of disabling back symptoms are not supported by the medical evidence of record." (R. 25.) The ALJ noted that the 2011 MRI findings were mild, and examinations generally showed unremarkable neurological findings. In addition, after eight sessions of PT in 2012, Plaintiff's care provider stated that his symptoms were well controlled; he reported a seventy-five percent improvement in pain in May 2012; physician and PT reports through 2014 reported overall improvement; Plaintiff worked as a volunteer cashier forty hours a week around August 2013, despite complaining of back pain from it; and he reported working out with a friend in July 2014. The ALJ also mentioned that Plaintiff occasionally engages in activities such as hunting and yard work, with his physician's approval; he stated that he once tried to lift a 300-pound display, despite his testimony that he could only lift ten to twelve pounds; and he goes to a weekend property in southern Illinois to hunt and has stayed as long as three weeks at a time in a former FEMA camper there.

The Court agrees with Plaintiff that the ALJ did not support her symptom evaluation with substantial evidence, and remand is warranted. In evaluating allegations of pain, adjudicators are directed to consider whether the symptoms are consistent with the objective medical evidence as well as other evidence in the record. 2016 WL 1119029, at *2; *see also* 20 C.F.R. § 404.1529(a) (explaining that the agency considers both "objective medical evidence and other evidence" in evaluating whether an impairment affects activities of daily living and the ability to work). Medical test results that are not consistent with symptoms are merely one

11

factor to be considered, and an ALJ is not free to "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." 2016 WL 1119029, at *6.

If the ALJ cannot make a favorable disability determination based on medical evidence alone, she must consider other evidence, *e.g.*, statements from the individual, medical sources, and other sources including agency personnel. *Id.* An evaluation of the intensity, persistence, and limiting effects of symptoms requires an analysis of regulatory factors including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; causal and aggravating factors; medication taken to alleviate symptoms, including its effectiveness and any side effects; other treatment the claimant has received; other measures used to alleviate symptoms, such as lying down or changing positions; and any other factors concerning functional limitations or restrictions due to symptoms. *Id.* at *7; *see* 20 C.F.R. 404.1529(c)(3) and 416.929(c)(3).

An ALJ must consider all the evidence in the record, and she is required to "explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions." 2016 WL 1119029, at *8. A claimant's statements made in connection with his claim may be compared to any other statements he has made in determining whether those statements are consistent. *Id.* Inconsistent statements, however, are not necessarily inaccurate statements. *Id.*

12

The ALJ believed that the medical evidence was not consistent with Plaintiff's pain allegations, relying primarily on 2011 MRI results and what she considered to be unremarkable physical examination findings. However, she overlooked record evidence supporting his claims, including consistent findings of pain and reduced range of motion, and the opinions of Dr. Hersonskey and Dr. Butler that Plaintiff's pain level warranted spinal surgery. *See Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (criticizing an ALJ for failing to address the connection between alleged symptoms and a medical history that could be expected to produce those symptoms). The ALJ did not condemn Plaintiff's decision to seek non-invasive treatment rather than opt for surgery; instead she seemed to doubt that he suffered significant pain at all.

The opinion also does not credit Plaintiff's efforts to seek regular medical care from both his primary physicians and specialists in neurology and pain management, and to pursue PT, despite inconsistent results and often being stymied from doing so by his worker's compensation insurance carrier. *See* 2016 WL 1119029, at *8. There is also no suggestion in the ALJ's decision or in the record that Plaintiff failed to follow his physician's advice. To the contrary, one consistent treatment recommendation was that Plaintiff engage in home exercise, which he attempted to do, according to progress notes from his various treaters. The ALJ, however, found Plaintiff's statement to Dr. Hung on June 23, 2015 that he had been working out with a friend to be evidence that his symptoms were not as disabling as alleged.

13

The ALJ also erred by focusing on the activities of daily living she found to be inconsistent with Plaintiff's allegations, without considering the full context of that evidence or other evidence supporting his claims. *See Reinaas*, 953 F.3d at 467 ("[T]he problem is not that the ALJ weighed the evidence in a certain way; it is that she cited only evidence favorable to her decision without discussing any contrary evidence."). For example, although Plaintiff hunted, the record does not reflect that he did it as often as the ALJ implied, nor did he do it without pain. He reported multiple times to his medical providers that his pain increased with periods of significant activity, including hunting, often for days afterward. *See id.* (finding error where the ALJ discussed the claimant's activities of daily living "but ignored his testimony about the pain and fatigue these activities cause him and his limitations with them"). Moreover, the ALJ did not explain how Plaintiff's activities translate into the ability to sustain full-time competitive employment. *See id.* ("We have previously cautioned ALJs that there are critical differences between keeping up with activities of daily living and holding down a full-time job."). Similarly, treatment records stating that Plaintiff's condition had improved do not, without more, establish that his symptoms are not disabling.

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found.

14

## CONCLUSION

For the foregoing reasons, Plaintiff's request to reverse the decision of the Commissioner is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 24] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

SO ORDERED.                    ENTERED:

DATE:     June 11, 2020         _____
                                **HON. MARIA VALDEZ**
                                **United States Magistrate Judge**